# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**THOMAS D. MAGRUDER and VIRGINIA CARRINGTON MAGRUDER    PLAINTIFFS**

**V.**                                  **CIVIL ACTION NO.1:07CV564 LTS-RHW**

**AMICA MUTUAL INSURANCE COMPANY**                 **DEFENDANT**

## ORDER

The Court has before it the motions listed in the pre-trial order. I established a briefing schedule to permit additional argument by both sides on the plaintiffs' motion [118] to exclude the testimony of Andy Johnson. With respect to the other motions, my rulings are as follows:

## PLAINTIFFS' MOTIONS

1. Plaintiffs' motion [116] to exclude the opinions and testimony of James W. Jordan, one of the engineers who participated (as an employee of Rimkus Consulting Group) in evaluating the plaintiffs' claim is **DENIED**. The objections raised by the plaintiffs go to the weight of this engineer's testimony, not its admissibility.

2. Plaintiffs' motion [216] to prevent the defendant from offering any evidence of the actual cash value of the insured property is **DENIED**. Since the Court has exercised its discretion and allowed the plaintiffs to supplement their expert responses on this point (to allow the plaintiffs to testify as to actual cash value), the defendant should also be allowed to supplement its responses on this point. The defendants will be allowed seven days from the date of this order to supplement its discovery responses concerning testimony of actual cash value of the insured property.

3. Plaintiffs indicated at the pre-trial conference their withdrawal of motion [217] requesting 48-hour disclosure of witnesses to be called and documents to be offered into evidence. For docket control purposes, the motion is **DENIED**. Each party shall make its best efforts to cooperate with each other and identify, at the close of each day's testimony, the witnesses it will call and the exhibits it expects to introduce the next day and will disclose to its opponent the identity of these witnesses and exhibits.

4. Plaintiffs' motion [218] to exclude inquiry of experts concerning the extent of flood damage compared with flood insurance payments is **DENIED**, but opinions of all experts concerning the extent of flood damage will be limited to those opinions that have been disclosed in accordance with the applicable procedural rules that govern this case.

5. Plaintiffs' motion [219] to exclude testimony of the flood claim adjustor (Craig Fowler) and documents related to flood claim adjustment is **DENIED**. The flood insurance adjustor has not been identified as an expert witness, and his testimony will therefore be limited to the facts he observed at first hand and the inferences that he may reasonably have drawn from these observations. The written records of his observations and inferences will also be so limited.

6. Plaintiffs' motion [222] to exclude two video tapes is **GRANTED** on the grounds that the conditions depicted in the video tapes do not reflect storm conditions near the insured property.

## DEFENDANT'S MOTIONS

7. Defendant's motion [103] to exclude the testimony of the plaintiffs' expert, Ted Biddy, based on Biddy's opinion that the plaintiffs' property was destroyed 100% by wind, is **DENIED**. Biddy has been qualified as an expert in other Katrina cases, and the defendant's objections to Biddy's testimony go to its weight and not its admissibility.

8. Defendant's motion [223] to exclude any evidence that other insurers and other adjustors or engineers engaged in misconduct is **GRANTED**. Testimony at this trial will be confined to actions taken by the people who participated in adjusting this claim (and their firms).

9. Defendant's motion [224] to exclude testimony on legal issues of policy interpretation is **GRANTED IN PART** and **DENIED IN PART**. No testimony will be allowed concerning the proper interpretation of policy terms, and, to the extent either party would offer evidence on this issue, the motion is **GRANTED**. To the extent any internal conflict in the defendant's interpretation of the terms of its own policy affected the adjustment of the plaintiffs' claim, evidence of that conflict will be admissible, and as to this evidence the motion is **DENIED**.

10. Defendant's motion [225] to exclude bulletins issued by the Mississippi Department of Insurance is **GRANTED** with the following exceptions: any bulletin the defendant's relied upon or purported to follow in adjusting the plaintiffs' claim will be admissible, and any direct communication between the defendant and the

Mississippi Department of Insurance concerning the adjusting of Katrina claims will also be admissible.

11. Defendant's motion [226] to exclude any reference to "Nexrad Certification" is **GRANTED**. Unless the plaintiffs can show that there is a certification process, the plaintiffs will not be permitted to cross-examine any expert concerning his lack of certification. If there is such a process for certification, and if the existence of such a process for certification is established by the plaintiffs, cross-examination will be permitted on this qualification.

12. Defendant's motion [227] to exclude evidence of the personal experiences that are unrelated to the events surrounding plaintiffs' particular claim is **GRANTED**.

13. Defendant's motion [229] to exclude references to other claims is **GRANTED**. Evidence concerning any claim that does not involve property in the immediate vicinity of the plaintiffs' property and for which the plaintiffs cannot lay a predicate that the handling of the other claim is relevant to the way the plaintiffs' claim was handled will be excluded from evidence.

14. Defendant's motion [230] to exclude evidence of its net worth or financial status is **GRANTED** as to the first phase of this trial.

15. Defendant's motion [231] to exclude evidence that would support an inference that the adjustors and engineers who acted on behalf of the defendant were negligent is **DENIED**. The action or inaction on the part of the defendant's adjustors and engineers is a necessary part of the evidence that will support or call into question the validity of their actions. There is no one who has been identified as an expert to establish a standard of care for adjustors or engineers, but there are contentions by the plaintiffs that the defendant's adjustors and engineers did not take certain steps that they should have taken to fairly evaluate the claim (e.g., go onto the roof of the insured dwelling, interview eye witnesses, personally inspect the site). The adjustors and engineers will be subject to cross-examination on how they did their job, and this is inseparable from actions or inaction that might also constitute evidence of negligence. Because there are no expert witnesses to establish the standard of care, I will not permit any direct inquiry to an expert whether he (the expert witness) considers the conduct of any of the engineers or adjustors involved in this case to have been negligent.

16. Defendant's motion [232] to exclude its claims-handling practices and procedures on the grounds that these documents constitute trade secrets is **DENIED**. A general exclusion of the claims-handling practices and procedures would deprive the plaintiffs of the opportunity to inquire whether the adjustors followed or departed from these self-imposed rules. Plaintiffs and their representatives shall not disseminate the defendant's claims-handling practices

and procedures outside the presentation of evidence in this case or in another action against the defendant.

17. Defendant's motion [233] to exclude from evidence any preliminary (draft) reports prepared by Charles Teichner, Todd Cormier, and Andy Johnson is **DENIED**. These draft reports may have information not contained in the witnesses' final reports, and the person who prepared the draft should be subject to cross-examination on the contents of the draft report, whether or not the defendant relied on the draft or preliminary report in making its decision on the merits of this claim.

18. Defendant's motion [234] to exclude George Sholl's estimate of wind speed based on his lack of expertise and inability to verify accuracy of the anemometer readings in Pascagoula is **DENIED**. There is no evidence that the anemometer was inaccurate, and the distance from the insured property to the place where the reading was taken goes to the weight of the evidence, not its admissibility.

19. Defendant's motion [235] to exclude any document that has not been disclosed (photograph, writing of any kind) is **GRANTED**. Except for documents used solely for the purpose of impeachment or for rebuttal, only those exhibits disclosed in the pre-trial order will be admissible at trial.

20. Defendant's motion [236] to exclude any evidence of emotional distress or mental anguish is **GRANTED**. The complaint does not state a claim for mental or emotional distress.

21. Defendant's motion [237] to exclude evidence that the destruction of the plaintiffs' home was caused 100% by wind forces, i.e. to exclude the testimony of Ted Biddy is **DENIED.** Testimony to the effect that wind damage destroyed the house and contents is admissible, subject to cross-examination on the plaintiffs' collection of flood benefits.

22. Defendant's motion [238] to exclude evidence that it claimed an evidentiary privilege with respect to any of its documents is **GRANTED**. The defendant's having claimed a lawful privilege is not relevant to any fact in dispute in the litigation.

23. Defendant's motion [239] to exclude testimony concerning replacement cost is **DENIED**. The insured dwelling has not been replaced. Repair or replacement would substantially increase the policy limits for the dwelling, but the measure of damages for the insured dwelling is actual cash value "until actual repair or replacement is complete." Replacement cost is a necessary element of the actual cash value formula (replacement cost less depreciation = actual cash value), but replacement cost coverage for the insured dwelling will not be

available to the plaintiffs in light of their decision not to repair or replace their dwelling. The policy provides for replacement cost coverage as to contents, without the covered contents having to actually be replaced. Therefore, evidence of replacement cost for the contents of the insured dwelling is admissible.

**SO ORDERED** this 10th day of February, 2009.

                                      s/ L. T. Senter, Jr.
                                      L. T. SENTER, JR.
                                      SENIOR JUDGE